# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

LEROY JOHNSON,

        Plaintiff,

        v.

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,

        Defendant.

No. 18 C 1395

Magistrate Judge Mary M. Rowland

## MEMORANDUM OPINION AND ORDER

Plaintiff Leroy Johnson filed this action seeking reversal of the final decision of the Commissioner of Social Security denying his applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act. The parties consented to the jurisdiction of the United States Magistrate Judge, pursuant to 28 U.S.C. § 636(c), and filed cross motions for summary judgment. This Court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c). For the reasons stated below, the Commissioner's decision is affirmed.

## I. PROCEDURAL HISTORY

On February 3, 2014, Plaintiff applied for DIB and SSI, alleging that he became disabled on January 1, 2010 because of a torn ligament in his left wrist, a torn muscle in his right arm, a left knee impairment, liver hemangioma, and high blood pressure. (R. at 56–58, 67–68, 104, 122). His claims were denied initially on August 13, 2014,

and upon reconsideration on April 27, 2015, after which Plaintiff requested a hearing. (*Id.* at 56–57, 100–01, 104–08, 115–25). Plaintiff, represented by counsel, testified at a hearing before an Administrative Law Judge (ALJ) on January 11, 2017. (*Id.* at 32–55). The ALJ also heard testimony from Thomas Gusloff, a vocational expert (VE). (*Id.* at 50–54).

The ALJ issued an unfavorable decision on May 11, 2017. (R. at 15–31). Applying the five-step sequential evaluation process, the ALJ found, at step one, that Plaintiff had not engaged in substantial gainful activity since January 1, 2010, his alleged disability onset date. (*Id.* at 20). At step two, the ALJ found that Plaintiff's degenerative disc disease of the lumbar spine and obesity were severe impairments. (*Id.*). The ALJ also concluded that Plaintiff's right rotator cuff and bicep tear and his osteoarthritis in his left hand were non-severe impairments. (*Id.* at 21). At step three, the ALJ determined that Plaintiff did not have an impairment or a combination of impairments that met or medically equaled the severity of any of the listings enumerated in the regulations. (*Id.* at 21–22).

The ALJ then assessed Plaintiff's Residual Functional Capacity (RFC)[1] and determined that Plaintiff has the RFC to perform the full range of light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b). (R. at 22). Moving to step four, the ALJ determined that Plaintiff could not perform any past relevant work. (*Id.* at 24). At step five, based on Plaintiff's RFC, age, education, work experience, and the

---

[1] Before proceeding from step three to step four, the ALJ assesses a claimant's RFC. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The RFC is the maximum that a claimant can still do despite his mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675–76 (7th Cir. 2008).

Medical-Vocational Guidelines (20 C.F.R. Part 404, Subpart P, Appendix 2), the ALJ determined that jobs exist in significant numbers in the national economy that Plaintiff can perform. (*Id.* at 25). Specifically, the ALJ found that Medical-Vocational Rule 202.18 directed a finding that Plaintiff was "not disabled." (*Id.*). Accordingly, the ALJ concluded that Plaintiff was not under a disability from his alleged disability onset date, January 1, 2010, through the date of the ALJ's decision. (*Id.* at 26).

On January 10, 2018, the Appeals Council denied Plaintiff's request for review. (R. at 1–5). Plaintiff now seeks judicial review of the ALJ's decision, which stands as the final decision of the Commissioner. *Villano v. Astrue*, 556 F.3d 558, 561–62 (7th Cir. 2009).

## II. STANDARD OF REVIEW

A court reviewing the Commissioner's final decision may not engage in its own analysis of whether the claimant is severely impaired as defined by the Social Security regulations. *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). Nor may it "reweigh evidence, resolve conflicts in the record, decide questions of credibility, or, in general, substitute [its] own judgment for that of the Commissioner." *Id.* The Court's task is "limited to determining whether the ALJ's factual findings are supported by substantial evidence." *Id.* "Evidence is considered substantial if a reasonable person would accept it as adequate to support a conclusion." *Indoranto v. Barnhart*, 374 F.3d 470, 473 (7th Cir. 2004); *see Moore v. Colvin*, 743 F.3d 1118, 1120–21 (7th Cir. 2014) ("We will uphold the ALJ's decision if it is supported by substantial evidence, that is, such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion.") (internal quotations omitted). "Substantial evidence must be more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). "In addition to relying on substantial evidence, the ALJ must also explain his analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005).

Although this Court accords great deference to the ALJ's determination, it "must do more than merely rubber stamp the ALJ's decision." *Scott v. Barnhart,* 297 F.3d 589, 593 (7th Cir. 2002) (citation, quotations, and alternations omitted). "This deferential standard of review is weighted in favor of upholding the ALJ's decision, but it does not mean that we scour the record for supportive evidence or rack our brains for reasons to uphold the ALJ's decision. Rather, the ALJ must identify the relevant evidence and build a 'logical bridge' between that evidence and the ultimate determination." *Moon v. Colvin*, 763 F.3d 718, 721 (7th Cir. 2014).

### III. DISCUSSION

Plaintiff challenges the ALJ's decision on various grounds. After reviewing the record and the parties' briefs, the Court determines that the ALJ did not make any reversible errors that would warrant remand. The ALJ's decision is affirmed.

### A. The Treating Physicians

The Court first addresses Plaintiff's argument that the ALJ reversibly erred in failing to properly explain the weight he gave to statements made by Plaintiff's

treating physicians, Mark Gonzalez, M.D., and Austin Chen, M.D.[2] This Court does not find any reversible error in this regard. An ALJ must give controlling weight to a treating physician's opinion if it is both "well-supported" by medical evidence and "not inconsistent with the other substantial evidence" in the record. *Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011); *see* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).[3] Because a treating physician has "greater familiarity with the claimant's condition and circumstances," an ALJ may only discount a treating physician's opinion based on good reasons "supported by substantial evidence in the record." *See Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010); *Gudgel v. Barnhart,* 345 F.3d 467, 470 (7th Cir. 2003).

"Even if an ALJ gives good reasons for not giving controlling weight to a treating physician's opinion, [he] has to decide what weight to give that opinion." *Campbell*, 627 F.3d at 308. In making this decision, the ALJ must consider a variety of factors, including: (1) the length of the treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship; (3) the extent to which medical evidence supports the opinion; (4) the degree to which the opinion is consistent with the entire record; (5) whether the physician was a specialist in the relevant area; and (6) other factors that validate or contradict the opinion. *Scrogham*

---

[2] The Commissioner does not dispute Plaintiff's characterization of Drs. Gonzalez and Chen as treating physicians. (Def.'s Mem., Dkt. 16 at 1, 3–4, 9–11).

[3] Last year, the Social Security Administration (SSA) adopted new rules for agency review of disability claims involving the treating physician rule. *See* 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5844 (Jan. 18, 2017). Because the new rules only apply to disability applications filed on or after March 27, 2017, they are not applicable here. *See id.*

*v. Colvin*, 765 F.3d 685, 697 (7th Cir. 2014); 20 C.F.R. §§ 404.1527(c)(2)–(6), 416.927(c)(2)–(6).

In May 2014, Plaintiff presented to Dr. Gonzalez for evaluation of left wrist pain. (R. 667). At this examination, Dr. Gonzalez gave Plaintiff a note stating that he could not have a job that required lifting or carrying more than 20 pounds, i.e., Plaintiff could not lift or carry more than is required by light work. (*Id.* at 668); *see* §§ 20 C.F.R. 404.1567(b), 416.967(b) (requiring the ability to lift "no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds"). The ALJ gave this conclusion "some weight." (R. 23). He reasoned that although Dr. Gonzalez's conclusion was based primarily on Plaintiff's prior wrist and shoulder injuries, which were no longer an issue, the light work restriction was consistent with Plaintiff's new back issues that recently resulted in fusion surgery. (*Id.*).

Plaintiff contends that this assessment was erroneous because the ALJ (1) incorrectly concluded that Plaintiff's wrist and shoulder injuries were no longer an issue; and (2) provided no explanation for using Dr. Gonzalez's restriction to accommodate Plaintiff's back issues. (Pl.'s Mem., Dkt. 13 at 11–12). As Plaintiff admits, however, the ALJ ultimately incorporated Dr. Gonzalez's light work restriction into his RFC determination. (*Id.* at 11; *see* R. 22). Thus, Plaintiff is no worse off than he would have been had the ALJ given Dr. Gonzalez's statement controlling weight. Plaintiff does not explain how re-evaluating Dr. Gonzalez's statement would lead to any additional RFC restrictions. In short, Plaintiff has not shown that a remand would achieve a more favorable result, making the ALJ's

assessment of Dr. Gonzalez's statement, at most, harmless error. *See McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011) (a court "will not remand a case to the ALJ for further specification where [it is] convinced that the ALJ will reach the same result," as "[t]hat would be a waste of time and resources").

The Court turns next to Dr. Chen's statement. Plaintiff presented to Dr. Chen in August 2014, complaining of right shoulder and elbow pain. (R. 885). Dr. Chen scheduled Plaintiff for surgery[4] the following month and recommended that Plaintiff restrict weightbearing to the right upper extremity to one pound with no overhead activities. (*Id.* at 886). The ALJ gave this recommendation "little weight," reasoning that it "was given prior to [Plaintiff's] shoulder surgery and was intended to keep his right shoulder from any additional damage prior to surgery." (*Id.* at 23–24). The ALJ also concluded that Dr. Chen's recommended restrictions were no longer supported, as there were no additional findings of continued shoulder issues after the surgery was performed. (*Id.* at 24).

The ALJ gave good reasons for giving little weight to Dr. Chen's recommended restrictions on weightbearing and overhead activities. *See Campbell*, 627 F.3d at 306. The ALJ reasonably interpreted Dr. Chen's recommendation as being "intended to keep [Plaintiff's] right shoulder from any additional damage prior to surgery." (R. at 23–24). Plaintiff does not challenge this interpretation other than arguing it was a "leap of logic." (Dkt. 13 at 12). Dr. Chen's recommendation reflects a temporary

---

[4] The surgery would be a right shoulder arthroscopy, subacromial decompression, proximal biceps tenodesis, and a concurrent right distal biceps repair with hamstring allograft. (R. 886).

measure that does not speak to Plaintiff's RFC, which is the *most* he can do despite his limitations. *See* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). As the Commissioner rightly argues, because Dr. Chen's recommendation about what Plaintiff should do "in the short-term" to protect his shoulder prior to surgery did "not translate into a long-term need," the ALJ did not err in giving little weight to Dr. Chen's recommended restrictions. *See Britt v. Berryhill*, 889 F.3d 422, 426 (7th Cir. 2018) (the ALJ did not err by failing to evaluate a doctor's recommendation for the claimant to elevate his foot "as needed" immediately after his injury because it was a temporary measure).

Nor did the ALJ err in determining that Dr. Chen's recommended restrictions were no longer supported after Plaintiff's scheduled surgery.[5] Earlier in his decision, the ALJ identified evidence that indicated subsequent "improved range of motion and strength" in Plaintiff's rotator cuff and bicep. (R. 21); *see Buckhanon ex rel. J.H. v. Astrue*, 368 F. App'x 674, 678–79 (7th Cir. 2010) (ALJ decisions are read "as a whole and with common sense"). For example, the ALJ cited hospital records from February 2015 that note movement and intact sensation in Plaintiff's right upper extremity. (R. 21, 1378–79). The ALJ also identified November 2016 examination notes reflecting that Plaintiff had a symmetric and full-strength shoulder shrug and moved all four extremities with full strength. (*Id.* at 21, 875–76). This evidence suggests that

---

[5] Neither party has directed the Court to documentary evidence showing exactly when Plaintiff underwent his right shoulder surgery. It did not take place on September 9, 2014 as originally planned, and it was rescheduled and cancelled numerous times in late 2014. (R. 877–82). Nonetheless, Plaintiff does not dispute the ALJ's finding that he underwent this surgery sometime in 2014. (*See, e.g.*, *id.* at 21, 24).

Plaintiff had normal movement and full strength in his right shoulder and arm after the scheduled surgery, which supports the ALJ's finding that Dr. Chen's restrictive limitations on weightbearing and overhead activities were no longer necessary.

Plaintiff argues that the ALJ inferred, without support, "that shoulder surgery had resulted in [the] complete eradication of symptoms." (Dkt. 13 at 12). Not so. The ALJ merely determined that there were no subsequent "additional findings of continued shoulder issues" that would need to be accommodated by Dr. Chen's recommended pre-surgery restriction. (R. 24). Plaintiff does not identify any additional findings that would undermine this determination.

Lastly, Plaintiff has not shown that the ALJ's failure to explicitly discuss the applicable regulatory factors, see 20 C.F.R. §§ 404.1527(c), 416.927(c), in evaluating the statements from Drs. Gonzalez and Chen requires remand. Not all errors by an ALJ require reversal; only those that could lead to a different result on remand. *See McKinzey*, 641 F.3d at 892. Plaintiff does not explain how the ALJ's consideration of the regulatory factors could have led to a more favorable conclusion. (Dkt. 13 at 11–13; Pl.'s Reply, Dkt. 17 at 3–4). For instance, although Plaintiff faults the ALJ for not mentioning the length or extent of his relationships with his treating physicians, Plaintiff also does not explain how long he has been treated by either Dr. Gonzalez or Dr. Chen, let alone how the nature of these relationships would lead to a different evaluation of their medical statements. (*See id.*). Plaintiff thus failed to explain why the ALJ's lack of discussion of the regulatory factors requires remand. *See Carter v. Astrue*, 413 F. App'x 899, 906 (7th Cir. 2011) (explaining that it is not the "court's

responsibility to research and construct the parties' arguments") (internal quotations omitted).

Importantly, as noted, the ALJ's RFC assessment already fully incorporates Dr. Gonzalez's light work restriction, which is the most Plaintiff could ask for with respect to Dr. Gonzalez. And no regulatory factor detracts from the temporary nature of Dr. Chen's recommendation. *See Todd v. Colvin*, No. 4:13-cv-00127-SEB-WGH, 2014 WL 4415925, at *6 (S.D. Ind. Sept. 4, 2014) (finding the ALJ's failure to address the § 404.1527(c) factors harmless because no factor would detract from the ALJ's reasoning for discounting a physician's opinion). Instead, the regulatory factors endorse the ALJ's decision to give Dr. Chen's recommendation little weight based on the lack of subsequent evidentiary findings to support continuing the recommended restrictions. *See Scrogham*, 765 F.3d at 697 ("whether a physician's opinion is supported by relevant evidence" and consistent "with the record as a whole" are relevant factors) (citing and quoting 20 C.F.R. § 404.1527(c)(3)–(4)); *see also Henke v. Astrue*, 498 F. App'x 636, 641 (7th Cir. 2012) (finding harmless error where the medical opinion the ALJ failed to consider would not have aided the claimant's case). In these circumstances, an evaluation of the relevant factors would not lead to a different result on remand. *See McKinzey*, 641 F.3d at 892.

**B. The ALJ's Subjective Symptom Evaluation**

Because an RFC assessment frequently "depend[s] heavily on the credibility of [a claimant's] statements concerning the 'intensity, persistence and limiting effects' of her symptoms," the Court turns to Plaintiff's argument that the ALJ improperly

evaluated his subjective symptom allegations. *See Bjornson v. Astrue*, 671 F.3d 640, 645 (7th Cir. 2012); *see also Outlaw v. Astrue*, 412 F. App'x 894, 897 (7th Cir. 2011) ("RFC determinations are inherently intertwined with matters of credibility[.]"). A two-step process governs the evaluation of a claimant's description of his pain and symptoms. First, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce the individual's symptoms, such as pain." SSR 16-3p, 2016 WL 1119029, at *2 (Mar. 16, 2016).[6] "Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's symptoms is established, [the ALJ] evaluate[s] the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities[.]" *Id.*

The ALJ "must competently explain an adverse-credibility finding with specific reasons supported by the record." *Engstrand v. Colvin*, 788 F.3d 655, 660 (7th Cir. 2015) (internal quotations omitted). Ultimately, the Court gives "special deference" to the subjective symptom evaluations of ALJs, who "hear testimony and examine other evidence," and will not overturn an ALJ's evaluation unless it is "patently wrong." *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017); *Horr v. Berryhill*, --

---

[6] SSR 16-3p supersedes SSR 96-7p and its focus on "credibility," clarifying "that subjective symptom evaluation is not an examination of the individual's character." *See* SSR 16-3p, at *1. Last year, the SSA clarified that SSR 16-3p only applies when ALJs "make determinations on or after March 28, 2016," and that SSR 96-7p governs cases decided before March 28, 2016. *See* Notice of Social Security Ruling, 82 Fed. Reg. 49462-03, 2017 WL 4790249, at n.27 (Oct. 25, 2017). Because the ALJ issued his opinion on May 11, 2017 (R. 26), SSR 16-3p applied. *See* Notice of Social Security Ruling, 82 Fed. Reg. 49462-03, at n.27.

- F. App'x ----, 2018 WL 3634894, at *3 (7th Cir. 2018). The claimant bears the burden of demonstrating that an ALJ's subjective symptom evaluation is "patently wrong." *See Horr*, 2018 WL 3634894, at *3.

Here, the ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [the alleged] symptoms [were] not entirely consistent with the medical evidence and other evidence in the record." (R. at 22–23). Similarly, as part of his evaluation under SSR 16-3p, the ALJ determined that Plaintiff's symptom allegations were "generally inconsistent with the record." (*Id.* at 24). The ALJ gave two reasons for this determination. (*Id.*). First, although Plaintiff's impairments allegedly dated back to 2010, he had failed to provide medical evidence of those impairments going back that far, with his back injury not being noted until 2014. (*Id.*). Second, the ALJ determined that the treatment notes and doctor opinions in the record did not support the extent of the alleged limitations, specifically, that he could only lift and carry ten pounds. (*Id.*). The ALJ further reasoned that the treatment notes showed normal strength in Plaintiff's extremities and that he had little difficulty walking. (*Id.*).

Plaintiff did not show that either justification was patently wrong. First, in evaluating Plaintiff's subjective symptom allegations, the ALJ was permitted to consider Plaintiff's inability to corroborate the existence of his impairments since his alleged disability onset date. *See Simila v. Astrue*, 573 F.3d 503, 519 (7th Cir. 2009) (explaining that an ALJ can consider, along with other factors, "the lack of objective evidence in rejecting a claimant's subjective complaints"); *Nowakowski v. Berryhill*,

No. 16 C 7904, 2017 WL 4046353, at *6 (N.D. Ill. Sept. 13, 2017) (an ALJ may consider the lack of supporting objective evidence to be probative in assessing the claimant's symptoms). Notably, Plaintiff did not identify any medical evidence in the record reflecting that his impairments have, in fact, existed since 2010.

Instead, Plaintiff contends that the ALJ was required to contact his treating physicians to obtain such medical evidence. (Dkt. 13 at 10 (citing *Clifford v. Apfel*, 227 F.3d 863, 873 (7th Cir. 2000)). But it was Plaintiff's obligation to provide medical evidence to support his claims. *Eichstadt v. Astrue*, 534 F.3d 663, 668 (7th Cir. 2008). In *Clifford,* the Seventh Circuit did not require an ALJ to affirmatively seek out medical evidence to bolster Plaintiff's subjective symptom allegations; it instructed an ALJ to seek out additional evidence or clarification if he "believes that he lacks sufficient evidence to make a decision." *Clifford*, 227 F.3d at 873; *see Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004) ("An ALJ need recontact medical sources only when the evidence received is inadequate to determine whether the claimant is disabled."). There is no indication here that the ALJ believed the evidence before him was insufficient to make a disability determination. Nor does Plaintiff describe how contacting his treating physicians might have corroborated the existence of his disabling impairments since 2010.

The ALJ was similarly allowed to consider the absence of medical opinions supporting Plaintiff's alleged lifting and walking limitations. *See Dowlen v. Colvin*, 658 F. App'x 807, 812 (7th Cir. 2016) (concluding that the ALJ's adverse credibility finding was not patently wrong, particularly without any medical opinion stating that

the claimant's "symptoms were more severe than the ALJ acknowledged"). Even if Dr. Gonzalez's lifting and carrying restriction did not account for Plaintiff's spinal problems, this omission does not affirmatively demonstrate that Plaintiff's spinal problems, if considered, would have imposed *further* limitations on Plaintiff's ability to lift and carry. (*Id.* at 668). And Dr. Chen's temporary, pre-surgery recommendation that Plaintiff restrict weightbearing in his right upper extremity does not support the notion that Plaintiff can, at most, lift and carry ten pounds. (*Id.* at 886).

Second, the ALJ permissibly discounted Plaintiff's subjective symptom allegations based on inconsistencies between the medical evidence and Plaintiff's allegations, as such inconsistencies "may suggest symptom exaggeration." *Jones v. Astrue*, 623 F.3d 1155, 1161 (7th Cir. 2010) (finding that the "ALJ properly relied upon the discrepancy between the objective evidence and Jones's self-reports" in determining credibility); *see Getch v. Astrue*, 539 F.3d 473, 483 (7th Cir. 2008) ("The ALJ reasonably discounted Mr. Getch's testimony given the discrepancy between his reports of disabling gout and medical reports documenting Mr. Getch's normal range of motion, ability to walk and stand without significant limitation, and absence of joint swelling or other gout symptoms."). The ALJ observed that recent treatment notes showed that Plaintiff had "normal strength in his extremities" and had "little difficulty walking." (R. 24). Physical examination notes cited by the ALJ indicate that in November 2016 (before Plaintiff's spinal surgery), Plaintiff's "[s]houlder shrug [was] symmetric and full strength," he moved all his extremities "with full strength," and his gait was intact. (*Id.* at 23–24, 875–76). These findings contradict Plaintiff's hearing testimony less

than two months later (and after his fusion surgery) that he cannot lift his shoulders up or lift and carry more than ten pounds (see *id.* at 32, 43, 47–48) as well as any purported walking limitations. Plaintiff does not square these physical examination findings with his subjective allegations.

Plaintiff attempts to fault the ALJ for not citing any records that affirmatively indicate that he "could stand, walk, or even sit on a sustained basis." (Dkt. 13 at 9). But that is not the ALJ's burden. Plaintiff must present medical evidence that he *cannot* stand, walk, or sit on a sustained basis. *See Eichstadt*, 534 F.3d at 668. Although Plaintiff identifies objective findings reflecting his degenerative disc disease and related back conditions, he fails to explain how these findings are "completely consistent with [his] complaints regarding sitting, standing and walking." (Dkt. 13 at 9; *see also id.* at 10 (asserting, without explanation, that "the nature and extent of [his] treatment for various musculoskeletal impairments certainly indicates that [he] has lifting and walking deficits")).

Evidence of Plaintiff's lower back impairments does not automatically equate to functional limitations caused by those impairments. *See Weaver v. Berryhill*, --- F. App'x ----, 2018 WL 3996853, at *3 (7th Cir. 2018) (being diagnosed with certain "impairments does not mean they imposed particular restrictions" on one's ability to work); *Perez v. Astrue*, 881 F. Supp. 2d 916, 945 (N.D. Ill. 2012) ("A diagnoses, or symptom for that matter, does not automatically translate to a limitation or impairment and simply listing them proves nothing."). And the only evidence Plaintiff cites to support his alleged upper body deficits is his hearing testimony. (Dkt. 13 at

9–10).[7] The question is whether this testimony was credible in the first place, so citing this testimony does not show that the ALJ erred by declining to credit it.

In sum, the ALJ's credibility determination is supported by "'specific reasons supported by the record,'" and Plaintiff did not show that it was "patently wrong." *Weaver*, 2018 WL 3996853, at *4 (quoting *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013)); *Horr*, 2018 WL 3634894, at *3.

## C. The ALJ's RFC Assessment

Finally, the Court addresses Plaintiff's contention that the RFC did not properly account for the limitations arising out of his physical impairments. An RFC is an administrative assessment of what work-related activities a claimant can perform despite limitations caused by his impairments. *Young*, 362 F.3d at 1000; SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996). In other words, a claimant's RFC constitutes the most he can do despite his physical and mental limitations. *Craft*, 539 F.3d at 675–76; 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). "In determining an individual's RFC, the ALJ must evaluate all limitations that arise from medically determinable impairments, even those that are not severe[.]" *Villano*, 556 F.3d at 563. The ALJ relies "upon medical evidence in the record and other evidence, such as testimony by the claimant or his friends and family" to make this determination. *Craft*, 539 F.3d at 676. Ultimately, the ALJ's RFC assessment need only include those restrictions

---

[7] In other instances, Plaintiff cites his attorney's opening statement. (Pl.'s Mem., Dkt. 13 at 9–10 (citing R. 38)). This is not evidence. *United States v. Schimmel*, 943 F.2d 802, 805 (7th Cir. 1991).

"that were supported by the medical evidence and that the ALJ found to be credible." *Outlaw*, 412 F. App'x at 898.

Here, the ALJ found that Plaintiff's degenerative disc disease of the lumbar spine and his obesity constituted severe impairments, and that Plaintiff's right rotator cuff and bicep tear and osteoarthritis in his left hand were non-severe impairments. (R. at 20–21). The ALJ further determined that, despite these severe and non-severe impairments, Plaintiff had the RFC to perform light work without any additional restrictions. (*Id.* at 22).

Plaintiff contends that "[h]ad the ALJ properly considered Plaintiff's limitations in combination," including the effects from his severe obesity, the ALJ's RFC assessment would have been more restrictive—to "sedentary work with postural and manipulative exceptions that would ultimately preclude employment." (Dkt. 13 at 6, 8). Plaintiff does not explain, however, how the objective findings require additional restrictions or sedentary work. *See Weaver*, 2018 WL 3996853, at *3 (the claimant must provide evidence that his conditions "support specific limitations affecting [his] capacity to work"); *Perez*, 881 F. Supp. 2d at 945 ("A diagnoses, or symptom for that matter, does not automatically translate to a limitation or impairment and simply listing them proves nothing."). For example, Plaintiff fails to show any link between these objective findings and the amount of time Plaintiff can stand or walk during the day, which must be known before a sedentary exertional restriction can be justified. *See* SSR 83-10, at *5 (sedentary work generally limits an individual to standing or walking for no more than two hours during the workday). Plaintiff also

does not explain how the objective findings he refers to, which generally only relate to his back impairments, shed any light on his ability to reach, handle, or finger with his upper extremities.

Furthermore, Plaintiff fails to identify any medical opinion that imposes RFC restrictions greater than those imposed by the ALJ, let alone the exertional, postural, and manipulative restrictions Plaintiff contends are necessitated by his impairments. (Dkt. 13 at 6–8; Pl's. Reply, Dkt. 17 at 2–3). "There is no error when there is no doctor's opinion contained in the record [that] indicated greater limitations that those found by the ALJ." *Best v. Berryhill*, 730 F. App'x 380, 382 (7th Cir. 2018) (alteration in original; internal quotations omitted).

The Commissioner contends that Plaintiff's argument about postural limitations is vague. This is true. Plaintiff did not identify which postural limitations should have been imposed. Giving Plaintiff the full benefit of the doubt and assuming he was referring to the restrictions included in the ALJ's hypothetical questions to the VE, his argument is still unpersuasive because of the lack of objective findings. Indeed Plaintiff merely cites his own testimony to justify his purported limitations in sitting, standing, reaching, and handling. (Dkt. 13 at 7–8; Pl.'s Reply, Dkt. 17 at 3). Although an ALJ's RFC assessment must consider a claimant's testimony, see *Craft*, 539 F.3d at 676, the ALJ is only required to incorporate limitations based on testimony that he finds credible. *Outlaw*, 412 F. App'x at 898; *see also Johnson v. Barnhart*, 449 F.3d 804, 805 (7th Cir. 2006) ("If one believed everything the plaintiff said at her hearing, she is indeed incapable of full-time gainful employment, but the administrative law

judge was not obliged to believe all her testimony. . . . [A]n administrative law judge is free to discount the applicant's testimony on the basis of the other evidence in the case."). The ALJ here did not find Plaintiff's testimony about his limitations consistent with the evidence in the record (see R. 22–24), a finding which, as discussed above, is not "patently wrong." Accordingly, the ALJ was not required to include in his RFC assessment restrictions that were supported only by Plaintiff's testimony.

With regard to Plaintiff's obesity, the Court disagrees with Plaintiff's characterization that the ALJ's assessment was boilerplate. The ALJ considered and discussed Plaintiff's obesity and stated that his limitations due to obesity are reflected in the RFC of light work. The ALJ noted that no physician found his obesity to be disabling (R. at 21). He acknowledged Plaintiff's allegations of right knee pain but found no medical evidence of such problems in the record. (*Id.*) The ALJ discussed Plaintiff's complaints of back and leg pain but noted that examinations showed no difficulty walking, normal strength in his extremities, normal straight leg raise, normal deep tendon reflexes and a normal gait. (*Id.* at 22–23). The ALJ discussed less optimal findings including reduced range of motion, mild difficulty squatting and the diagnosis of lumbar degenerative disc disease, first noted in 2014. (*Id.* at 23). But the ALJ also noted that Plaintiff received medications, treatment, and eventually elected to have spinal fusion surgery in December 2016. (*Id.*). The ALJ further observed that Plaintiff's BMI of 33 was generally consistent with examination findings and that recent treatment notes showed normal strength in his extremities. (*Id.* at 23–24). The

ALJ acknowledged the ample findings of degenerative disc disease but found that no doctor had limited him to lifting ten pounds or less and treatment notes showed he had little difficulty walking. (*Id.* at 24).

Plaintiff's argument about his obesity is cursory and unsupported by citation to any medical evidence. (Dkt. 13 at 8). He characterizes his obesity as "morbid[]"[8] and says that he can sit for no more than 20 minutes and stand for no more than 10 minutes. Neither of these statements is supported by citation to any medical evidence. Plaintiff then argues, again without citation to evidence, that his "added weight can only serve to further limit his musculoskeletal capabilities." (*Id.*). In short, Plaintiff does not point to any doctor opinion or other medical evidence supporting any additional limitations due to his obesity, and the Court will not reweigh the evidence the ALJ already considered. Therefore, in light of the ALJ's discussion and Plaintiff's failure to identify evidence to support any further work-related restrictions, the Court finds no error in the ALJ's analysis of Plaintiff's obesity. *See Capman v. Colvin*, 617 F. App'x 575, 581 (7th Cir. 2015) ("Capman never submitted any evidence explaining how his obesity affected his ability to work or aggravated his other conditions"); *Pepper*, 712 F.3d at 365 (ALJ's discussion combined with plaintiff's "failure to specify how her obesity further impaired her ability to work, demonstrate that the ALJ adequately considered [plaintiff's] obesity"); *Outlaw*, 412 F. App'x at 898 (implicit consideration of obesity sufficient in light of medical record).

---

[8] Plaintiff has a BMI of 33 but generally only a BMI of 40 or higher is "Class 3 obesity" which is considered "extreme" or "severe" obesity. *See* CDC, 'Defining Adult Overweight and Obesity', https://www.cdc.gov/obesity/adult/defining.html.

Moreover, the record shows that the RFC is supported by substantial evidence. Plaintiff's own treating physician, Dr. Gonzalez, stated that Plaintiff could lift or carry 20 pounds. (R. 668). The opinions of the non-examining state agency consultants, to which the ALJ gave partial weight, found that Plaintiff could perform medium work, occasionally lifting or carrying 50 pounds and frequently lifting or carrying 25 pounds, had no postural limitations and could stand or walk for six hours out of an eight-hour workday. (*Id.* at 23, 62–63, 71–72, 83–84, 95–96). These findings are consistent with, or more restrictive than, the full range of light work, which requires the ability to lift 20 pounds; to frequently lift or carry objects weighing up to 10 pounds; and to stand or walk, off and on, for a total of approximately six hours. 20 C.F.R. §§ 404.1567(b), 416.967(b); SSR 83-10, 1983 WL 31251, at *6 (Jan. 1, 1983). As also noted above, the ALJ cited medical evidence indicating that Plaintiff had symmetric and full-strength shoulder shrug and full strength in all his extremities, which would suggest an absence of manipulative limitations. (R. at 21, 876). The ALJ further concluded that light work would accommodate Plaintiff's back problems and obesity and limit any additional damage to his right rotator cuff. (*Id.* at 23–24).

Therefore, Plaintiff failed to meet his burden to demonstrate that the medical evidence and credible non-medical evidence in the record warranted RFC restrictions greater than those imposed by the ALJ. *See Outlaw*, 412 F. App'x at 898; *Penny v. Astrue*, No. 08-2270, 2010 WL 1931312, at *4 (C.D. Ill. May 13, 2010). Nor did Plaintiff show that the ALJ's decision that he can perform a full range of light work was not grounded in substantial evidence. *See Olsen v. Colvin*, 551 F. App'x 868, 875

(7th Cir. 2014) (noting that the claimant has the "burden to show that the ALJ's decision is not supported by substantial evidence").

## IV. CONCLUSION

For the reasons stated, Plaintiff's motion for summary judgment [12] is **DENIED**, and the Commissioner's motion for summary judgment [15] is **GRANTED**. Pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision is affirmed.

Dated:  November 5, 2018                    E N T E R:

                                        _____
                                        MARY M. ROWLAND
                                        United States Magistrate Judge